UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

J & J SPORTS PRODUCTIONS, INC.,

    Plaintiff,

v.                                                                                            Case No. 15-C-0656

SANGRIA'S MEXICAN GRILL 2 LLC, et al.,

    Defendants.

**ORDER ON PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Plaintiff J & J Sports Productions, Inc. brought this action alleging that defendants Sangria's Mexican Grill 2 LLC and Shirley Gregory, individually and as registered agent for Sangria's, knowingly and willfully violated 47 U.S.C. §§ 553 and 605 by unlawfully intercepting and exhibiting "*Floyd Mayweather, Jr. v. Robert Guerrero, WBC Welterweight Championship Fight Program,*" including undercard bouts and the entire television broadcast, on May 4, 2013, at Sangria's in Appleton, Wisconsin. Jurisdiction arises under 28 U.S.C. § 1331. No licensed attorney signed the answer on behalf of Sangria's Mexican Grill 2 LLC. Since a member of an LLC cannot appear pro se on behalf of the LLC, Defendant Sangria's Mexican Grill 2 LLC failed to appear, plead, or otherwise defend within the time allowed and, therefore, defaulted. The Clerk entered default against Defendant Sangria's Mexican Grill 2 LLC on September 17, 2015. Plaintiff now moves for entry of default judgment and award of damages, attorney's fees, and costs as to Sangria's. (ECF No. 16.)

## BACKGROUND

The background facts of this case, except for those relating to damages, are taken from the allegations of Plaintiff's Complaint and the affidavit and supporting documents filed with Plaintiff's motion for default judgment. They are deemed admitted as a consequence of Defendant Sangria's default. *See, e.g., Black v. Lane*, 22 F.3d 1395, 1397 n.4 (7th Cir. 1994). Plaintiff has established that it owned the distribution rights to the fight program, which was broadcast by closed circuit television or by encrypted satellite signal. The broadcast originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal. Plaintiff entered into contracts with commercial establishments in Wisconsin and throughout North America to enable them to publicly exhibit the program to their patrons.

One of Plaintiff's investigators visited Sangria's at 8:55 p.m. on May 4, 2013. (Aff. of Russell D. Joseph, ECF No. 16-3.) The investigator observed a flat screen television mounted on the west wall of the bar room displaying the fight. The device was tuned to the pay-per-view fight being broadcast by SHO, and the investigator observed the broadcast of cameras going between Cruz and Munoz, with the fight about to start. The investigator did not pay a cover charge to enter the bar, and he counted a maximum of 40 individuals in the establishment until the bar was full to capacity with people waiting to get into the building. Sangria's had a capacity of approximately 40 people. He left the establishment at 9:10 p.m.

## LIABILITY

Plaintiff alleges that Defendant violated 47 U.S.C. §§ 553 and 605, but without the benefit of discovery or an admission from Defendant, Plaintiff cannot determine exactly how Defendant

2

intercepted its signal (i.e., via coaxial cable or satellite). As Plaintiff acknowledges, it may not simultaneously pursue relief under §§ 553 and 605 because the sections target two distinct types of piracy. *See United States v. Norris*, 88 F.3d 462, 468 (7th Cir. 1996) (holding that 47 U.S.C. § 605 governs the interception of programming as it travels through the air, while 47 U.S.C. § 553 governs the interception of cable television programing traveling over a cable network). Plaintiff requests relief under § 605, which often produces higher damages awards, but cannot demonstrate conclusively that Defendant intercepted a satellite signal on May 4, 2013. Nevertheless, since Defendant's failure to appear or defend deprived Plaintiff of the opportunity to conduct discovery regarding the transmission at issue, I conclude that liability is appropriately established under § 605. *Accord J & J Sports Prods., Inc. v. Aguilera*, No. 09-4719, 2010 WL 2362189, at *2 (N.D. Ill. June 11, 2010) .

As a result of Defendant's default, Sangria's is deemed to have unlawfully intercepted the program and shown it to their patrons and to have done so willfully and for purposes of direct or indirect commercial advantage or private financial gain. *See Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"); *see also Kingvision Pay-Per-View, Ltd. v. Scott E'S Pub., Inc.*, 146 F. Supp. 2d 955, 959 (E.D. Wis. 2001) ("'Willful' as used in these statutes means a 'disregard for the governing statute and an indifference for its requirements.'") (quoting *ON/TV v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985)). "'In addition, the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct.'" *Garden City Boxing Club, Inc. v. Frezza*, 476 F. Supp. 2d 135, 138 (D. Conn. 2007)

3

(quoting *J & J Sports Prods., Inc. v. Drake*, No. 06-246, 2006 WL 2927163, at *5 (E.D.N.Y. Oct. 11, 2006)).

## DAMAGES

A claimant entitled to relief under § 605 may elect actual or statutory damages pursuant to § 605(e)(3)(C)(I). Plaintiff has elected statutory damages, which range from a minimum of $1,000 to a maximum of $10,000, in the discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff also seeks enhanced damages for a willful violation. Section 605 permits enhanced damages of up to $100,000, in the discretion of the court, where the defendant has exhibited disregard for the governing statute and indifference to its requirements. *See, e.g., Kingvision*, 146 F. Supp. 2d at 959-61. Finally, under § 605(e)(3)(B)(iii), Plaintiff has requested an award of attorneys' fees and costs in the amount of $1,712.00.

I first turn to the question of what amount of statutory damages is appropriate in this case. There are various ways in which courts have gone about calculating statutory and enhanced damages for violations of § 605:

> Some courts have assessed statutory damages using as a yardstick the number of patrons in the establishment viewing the show. *See, e.g., Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 489 (listing cases); *Time Warner Cable v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y.1997) (same). Some courts have awarded a flat sum for each violation. *See, e.g., Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 489-90 (listing cases); *Taco Rapido Rest.*, 988 F. Supp. at 111 (same). A multiplier has been used in cases of willful violations. *See, e.g., Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 491 (recommending for willful violation an additional three times the base statutory damages award for one defendant, an additional four times the award for another defendant, and an additional eight times the award for a third defendant); *Cablevision Sys. Corp. v. Maxie's N. Shore Deli Corp.*, No. CV 88 2834(ASC), 1991 WL 58350, *2 (E.D.N.Y.1991) (awarding an additional amount for willful violation in the amount of five times the initial statutory damages award).

4

*Kingvision*, 146 F. Supp. 2d at 960. The court in *Kingvision* calculated the statutory damages based upon the rate the plaintiff charged its customers for the right to exhibit the program, which in turn was based upon the maximum fire code occupancy of the building in which the exhibition was to take place.

Here, Plaintiff has provided its rate card indicating what it would charge to permit the defendants to show its fight program based on the maximum capacity of the facility where the event is broadcast. (Rate Card from J & J Sports Productions, Inc., ECF No. 16-2.) Because Sangria's had a posted capacity of 40 people, Plaintiff's corresponding standard rate was $2,200.00. (Aff. of Russell D. Joseph, ECF No. 16-3; Rate Card from J & J Sports Productions Inc., ECF No. 16-2.) Accordingly, the court will award statutory damages of $2,200.00.

As I have already concluded that Defendant Sangria's violation was willful within the meaning of the statute, I now turn to the question of what amount of enhanced damages is appropriate. The only guidance the statute itself gives courts in assessing damages for willful violations is that they not exceed $100,000 for violations of § 605 and $50,000 for violations of § 553. 47 U.S.C. § 553(c)(3)(B); 47 U.S.C. § 605(e)(3)(C)(i)(II). In order to arrive at an enhanced damage figure, courts have considered factors such as: (1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event. *Joe Hand Prods. v. Kaczmar*, No. 08-2910, 2008 WL 4776365, at *2 (N.D. Ill. Oct. 29, 2008) (citations omitted). Beyond these factors, "courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first

5

offense)." *Id*.

Here, there is nothing to suggest that Defendant Sangria's has pirated in the past and there is no indication of the extent of any ill-gotten gains by Defendant or the actual damages suffered by Plaintiff for this act of piracy. There is also no evidence that Defendant advertised the event, and the investigator was not required to pay a cover charge to enter the bar. Thus, all of these factors point toward a lower amount of enhanced damages. As noted, a maximum of around 40 people were in Sangria's during the investigator's visit, also suggesting that Defendant did not receive substantial financial gains as a result of his piracy of the fight program. In order to deter future violations, the court will impose enhanced damages of $6,600, applying a multiplier of three times the amount of the $2,200 in statutory damages.

## COSTS AND ATTORNEYS' FEES

Finally, I turn to Plaintiff's request that I award $1,712.00 in costs and attorneys' fees. Under 47 U.S.C. § 605(e)(3)(B), if a violation of the section is found, attorneys' fees and costs are mandatory. The total attorney hours submitted, multiplied by the hourly rate requested by plaintiff comes to a total of $1,250.00 in attorneys' fees. (Aff. of Peter S. Balistreri, ECF No. 16-1.) Plaintiff also requests $462.00 in costs: $400.00 for filing fees and $62.00 for service of process. (*Id.*) Plaintiff's request is reasonable, so the court will award Plaintiff $1,712.00 in costs and attorneys' fees.

6

Case 1:15-cv-00656-WCG   Filed 10/06/15   Page 6 of 7   Document 17

offense)." *Id*.

Here, there is nothing to suggest that Defendant Sangria's has pirated in the past and there is no indication of the extent of any ill-gotten gains by Defendant or the actual damages suffered by Plaintiff for this act of piracy. There is also no evidence that Defendant advertised the event, and the investigator was not required to pay a cover charge to enter the bar. Thus, all of these factors point toward a lower amount of enhanced damages. As noted, a maximum of around 40 people were in Sangria's during the investigator's visit, also suggesting that Defendant did not receive substantial financial gains as a result of his piracy of the fight program. In order to deter future violations, the court will impose enhanced damages of $6,600, applying a multiplier of three times the amount of the $2,200 in statutory damages.

## COSTS AND ATTORNEYS' FEES

Finally, I turn to Plaintiff's request that I award $1,712.00 in costs and attorneys' fees. Under 47 U.S.C. § 605(e)(3)(B), if a violation of the section is found, attorneys' fees and costs are mandatory. The total attorney hours submitted, multiplied by the hourly rate requested by plaintiff comes to a total of $1,250.00 in attorneys' fees. (Aff. of Peter S. Balistreri, ECF No. 16-1.) Plaintiff also requests $462.00 in costs: $400.00 for filing fees and $62.00 for service of process. (*Id.*) Plaintiff's request is reasonable, so the court will award Plaintiff $1,712.00 in costs and attorneys' fees.

For the reasons stated above, the court grants Plaintiff's motion for judgment by default against the defendant in the amount of $10,512.00. The Clerk is directed to enter judgment accordingly.

Dated this   6th   day of October, 2015.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court